UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

ROGER L. LYLES,

                    Plaintiff,                            Case No. 1:10-cv-528

v.                                                Honorable Paul L. Maloney

DELORES CROSBY et al.,

                    Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff paid the $350.00 filing fee.[1] Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed as frivolous and for failure to state a claim.

---

[1] Plaintiff initially was granted leave to proceed *in forma pauperis* in this action by the Eastern District of Michigan. After the case was transferred, this Court discovered that Plaintiff has three strikes within the meaning of 28 U.S.C. § 1915(g). As a result, the Court vacated the order granting Plaintiff leave to proceed *in forma pauperis* and ordered him to pay the $350.00 filing fee.

**Factual Allegations**

Plaintiff is incarcerated in the Mound Correctional Facility (NRF), but the events giving rise to his complaint also occurred at the Lakeland Correctional Facility (LCF), Bellamy Creek Correctional Facility (IBC) and the Muskegon Correctional Facility (MCF). In his *pro se* amended complaint (docket #28), he sues the following Defendants: MCF Administrative Assistant Delores Crosby; MCF [2] School Principal M. Barnett; MCF[3] Warden Shirlee Harry; MCF Resident Unit Manager B. Barbier; MCF Assistant Deputy Warden S. Walker; MCF Librarian David Amos; MCF Corrections Officers (unknown) Chandler, (unknown) Wallace, (unknown) Smith and (unknown) Jordan; LCF Assistant Deputy Warden Bonita Hoffner; LCF Resident Unit Manager O. Moore; IBC Program Coordinator William Morrow; IBC[4] Classification Director (unknown) Stewart; LCF Corrections Officer S. Grigsby; LCF Warden Carol Howes; and unknown LCF employees. In addition, Plaintiff sues Michigan Department of Corrections (MDOC) Hearing Officer I. Rairigh, MDOC Hearing Administrator Richard Stapleton, and MDOC Prisoner Affairs Administrator R.D. Russell.

Plaintiff's amended complaint is composed of three counts, which relate to different incidents. In Count I, Plaintiff claims that he was illegally confined in segregation while incarcerated at MCF in July 2009. Plaintiff claims that on July 25, 2009, he was assaulted by his cell mate who fashioned a weapon by putting a lock in a sock. After Plaintiff reported the assault

---

[2]Barnett was the school principal at MCF at the time of the events giving rise to Plaintiff's complaint, but according to Section III of the amended complaint, he currently is employed at the Oaks Correctional Facility.

[3]Defendant Harry was the warden at MCF at the time of the events giving to rise to Plaintiff's complaint, but according to Section III of the amended complaint, she currently is employed at the Pugsley Correctional Facility.

[4]Defendant Stewart was the librarian at IBC at the time of the events giving to rise to Plaintiff's complaint, but according to Section III of the amended complaint, he currently is employed at the Mound Correctional Facility.

to Defendant Jordan, he was placed in temporary segregation pending a hearing on a notice of intent to classify him to segregation. As a result of his transfer to segregation, Plaintiff claims that Defendant Chandler conducted a "retaliatory" pack-up of his personal property. Plaintiff claims that his footlocker and duffle bag were damaged in the process and two combination locks and a Casio watch were lost. On July 28, Plaintiff sent a letter to Defendant Harry complaining about his unjust confinement in segregation. While he was in segregation, Plaintiff was in a dry cell without a toilet or sink. When Plaintiff needed to use the bathroom, he was placed in handcuffs and escorted to a cell with a toilet. Plaintiff further alleges, "[h]owever, both Ms. Smith and Ms. Wallace claim they forgot to have me taken out of the dry cell for bathroom use. Plaintiff sustain injury." (Am. Compl., ¶ 12, Page ID #132.)

On July 30, Plaintiff filed a grievance concerning his illegal confinement in segregation. Plaintiff contends that Defendants Walker, Barbier and Russell failed to consider the merits of his grievance and improperly denied his Step I grievance and grievance appeals on the ground that he had been released from segregation and transferred to another facility. Plaintiff alleges that the illegal confinement continued for six days, until he was transferred to IBC on July 31. He contends that his confinement in segregation for six days violated his Fourteenth Amendment due process and equal protection rights and his Eighth Amendment right against cruel and unusual punishment.

Plaintiff was classified as a legal writer upon his arrival at IBC; however, Defendants Marrow and Stewart refused to immediately place him in a work assignment because there was another prisoner ahead of him. Plaintiff contends that MDOC policy permits prisoners with critical skills to be placed directly in a work assignment, but Defendants Marrow and Stewart "entered into

a[n] agreement based upon illegal and unwarranted motives which ended in an [sic] retaliatory transfer on September 14, 2009, to Mound Correctional Facility." (Am. Compl., ¶ 14, Page ID #133.)

Count II of the amended complaint concerns an alleged period of illegal room confinement while Plaintiff was incarcerated at LCF in 2004. Plaintiff claims that he was charged with a major misconduct for disobeying a direct order on April 28, 2004. After the misconduct charge, Defendant Hoffner removed Plaintiff from his honor status placed him on room confinement for thirty days without waiting for a misconduct hearing to be conducted. A misconduct hearing was conducted on May 17, 2004. The hearing officer, Defendant Rairigh, rejected Plaintiff's defenses and found him guilty as charged. Plaintiff sought a rehearing with the Hearing Administrator Defendant Stapleton. Plaintiff claimed that the punishment imposed by Defendant Rairigh violated his right against double jeopardy because Hoffner already had imposed a punitive sanction stemming from the same incident. Defendant Stapleton denied Plaintiff's request. Plaintiff claims that Defendants Howes and Moore continued his room confinement until he was transferred to another facility in April 2006. Plaintiff contends that the two years he spent on room confinement constituted cruel and unusual punishment in violation of the Eighth Amendment.

In Count III, Plaintiff claims that he was unlawfully placed on room confinement in January 2009, while he was incarcerated at MCF. Plaintiff claims on January 13, 2009, Defendant Barnett removed him from his legal writer work assignment without just cause. Plaintiff claims that he was subjected to room confinement for forty-eight days without a misconduct or notice and a hearing. Plaintiff claims that Defendants Amos and Barnett denied his access to the library and did not pay him any wages until he was reinstated to his legal writer job by Defendant Harry some forty-

eight days later. Plaintiff filed a Step I grievance that was denied by Defendant Crosby. According to the Step I response, Plaintiff was placed "on lay in status with pay pending investigation and after everything cleared [he] resumed [his] work assignment." (Step I Grievance Response, 2/18/09, Page ID #34.) Plaintiff maintains that Crosby's response did not comport with MDOC policy concerning prison employment. He further claims that Defendant Harry improperly rejected his Step II grievance appeal as untimely.

Plaintiff seeks injunctive relief, as well as compensatory and punitive damages.

## Discussion

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## I.    **Count I**

### A.    Segregation from July 26-31, 2009 at MCF

Plaintiff claims that on July 25, 2009, he was assaulted by his cell mate who fashioned a weapon by putting a lock in a sock. After Plaintiff reported the assault to Defendant Jordan, he was placed in temporary segregation pending a hearing on a notice of intent to classify him to segregation. On July 28, Plaintiff sent a letter to Defendant Harry complaining about his unjust confinement in segregation. While he was in segregation, Plaintiff alleges that he was in a dry cell without a toilet or sink. When Plaintiff needed to use the bathroom, he was placed in handcuffs and escorted to a cell with a toilet. Plaintiff further alleges, "[h]owever, both Ms. Smith and Ms. Wallace claim they forgot to have me taken out of the dry cell for bathroom use. Plaintiff sustain injury." (Am. Compl., ¶ 12, Page ID #132.) Plaintiff remained in segregation until he was transferred to IBC on July 31. He contends that his illegal confinement in segregation for six days

violated his Fourteenth Amendment due process and equal protection rights and his Eighth Amendment right against cruel and unusual punishment.

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999)). Although Plaintiff was denied certain privileges as a result of his placement in segregation, he does not allege or show that he was denied basic human needs and requirements. The fact that Defendants Smith and Wallace forgot to take him out of the dry cell for bathroom breaks on two isolated occasions does not rise to the level of an Eighth Amendment violation. Moreover, while Plaintiff makes a conclusory allegation that he "sustain[ed] injury," Plaintiff does not he suffered any specific injury from missing those bathroom breaks. Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Watson v. McClanahan*, No. 99-6124, 2000 WL 922899, at *2 (6th Cir. June 27, 2000); *Benson v. Carlton*, No.

99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000). As such, Plaintiff fails to state an Eighth Amendment claim against Defendants.

Plaintiff also contends that his six-day placement in segregation violated his due process rights. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). While Plaintiff was placed in a dry cell, he was provided with routine bathroom breaks. Consequently, Plaintiff's brief stay in segregation was not "atypical and significant." Plaintiff, therefore, fails to state a due process claim.

Plaintiff further claims that his placement in segregation violated his equal protection rights. Plaintiff, however, does not make any factual allegations whatsoever that would support an equal protection claim. Thus, his conclusory allegation fails to state a claim. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim).

B.    Pack-up/Damage to Personal Property at MCF

As a result of his transfer to segregation, Plaintiff claims that Defendant Chandler conducted a "retaliatory" pack-up of his personal property. Plaintiff claims that his footlocker and duffle bag were damaged in the process and that two combination locks and a Casio watch were lost. To the extent that Plaintiff asserts a due process claim arising from his lost or damaged property, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy

Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff fails to state a due process claim.

Plaintiff also asserts that "Defendant Chandler conducted a retaliatory pack-up of plaintiff['s] personal property resulting from [his] segregation status." (Am. Compl., Page ID #130.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to state a retaliation claim because his placement on segregation status did not constitute "protected conduct."  Defendant Chandler merely conducted a routine pack-up as the result of Plaintiff's transfer to the segregation unit.  Furthermore, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th

Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that the pack-up was an act of retaliation. Accordingly, his speculative allegation fails to state a claim.

C.      Complaints and Grievance re: Segregation at MCF

Plaintiff alleges that he sent a letter to Defendant Harry on July 28 complaining about his unjust confinement in segregation. Two days later, he filed a grievance. Plaintiff contends that Defendants Walker, Barbier and Russell failed to consider the merits of his grievance and improperly denied his Step I grievance and grievance appeals on the ground that he had been released from segregation and transferred to another facility.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene*

- 12 -

*v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Harry, Walker, Barbier and or Russell engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

D.     Work Assignment at IBC and Transfer to NFR

Plaintiff alleges that he was classified as a legal writer upon his arrival at IBC; however, Defendants Marrow and Stewart refused to immediately place him a work assignment because there was another prisoner ahead of him. Plaintiff contends that MDOC policy permits prisoners with critical skills to be placed directly on work assignment, but Defendants Marrow and Stewart "entered into a[n] agreement based upon illegal and unwarranted motives which ended in an [sic] retaliatory transfer on September 14, 2009, to Mound Correctional Facility." (Am. Compl., ¶ 14, Page ID #133.)

With regard to Defendants' failure to place Plaintiff in a job assignment, the Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o

prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).

Furthermore, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Plaintiff also fails to state a retaliation claim against Defendants Marrow and Stewart arising from his transfer to NRF. Like the retaliation claim discussed above, Plaintiff makes nothing more than a conclusory allegation that the transfer was retaliatory. Plaintiff does not allege that he was engaged in protected conduct, which is the first requirement for a retaliation claim. *Thaddeus-X*, 175 F.3d at 394. Even if he was, he cannot show that his transfer from MCF to NRF constituted an "adverse action," particularly when they both are security level II facilities. *See Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("Since prisoners are expected to endure more than the

average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."); *Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). Finally, Plaintiff does not allege that the transfer was motivated by his engagement in protected conduct. Accordingly, Plaintiff fails to state a retaliation claim arising from his transfer to NRF.

## II.    **Count II**

In Count II, Plaintiff claims that he was placed on room confinement from April 2004 to April 2006, in violation of his constitutional rights. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[5] Plaintiff's complaint is untimely. He asserts claims arising no later than April 2006, when the period of room confinement

---

[5] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statute enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

at LCF ended. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued no later than 2006. However, he did not file his complaint until April 2010, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint does not present a rational basis in law if it is time-barred by the appropriate statute of limitations. The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000). Accordingly, Count II of Plaintiff's complaint must be dismissed as frivolous.

### III.   **Count III**

In Count III, Plaintiff claims that he was unlawfully placed on room confinement in January 2009, while he was incarcerated at MCF. Plaintiff claims on January 13, 2009, Defendant Barnett removed him from his legal writer work assignment without just cause. Plaintiff alleges that

he was subjected to room confinement for forty-eight days without a misconduct or notice and a hearing. Plaintiff claims that Defendants Amos and Barnett denied his access to the library and did not pay him any wages until he was reinstated to his legal writer job by Defendant Harry some forty-eight days later. Plaintiff filed a Step I grievance that was denied by Defendant Crosby. According to the Step I response, Plaintiff was placed "on lay in status with pay pending investigation and after everything cleared you resumed your work assignment." (Step I Grievance Response, 2/18/09, Page ID #34.) Plaintiff maintains that Crosby's response did not comport with MDOC policy concerning prisoner employment. He further asserts that Defendant Harry improperly rejected his Step II grievance appeal as untimely.

Plaintiff fails to state a claim arising from the termination of his legal writer job assignment because, as previously discussed, prisoners have no constitutionally protected liberty interest in prison employment. *See Dellis*, 257 F.3d at 511; *Newsom*, 888 F.2d at 374; *Ivey*, 832 F.2d at 955. In the absence of a liberty interest, Plaintiff fails to state a due process claim arising from the termination of his prison employment. Likewise, Plaintiff fails to state a claim arising from the delay in receiving his wages for work performed before he was terminated from his job. *See Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).

In addition, Plaintiff was not entitled to due process before his placement on room confinement for forty-eight days. Under MDOC policy, a prisoner may be placed an unemployable status for a variety of reasons. *See* MDOC Policy Directive 05.01.100(Y). An unemployable prisoner may not participate in any more leisure time activities than those who work full time. *Id.* at 05.01.100(AA). Consequently, prisoner who are classified as unemployable are confined to their

cells during regular work hours until they are reclassified to a school or work assignment. *Id.* at

05.01.100(BB). As discussed in the context of Plaintiff's segregation claim, in order to state a due

process claim, Plaintiff must establish that his placement on unemployable status imposes an

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483. The Sixth Circuit has explicitly held that placement on unemployable

status does not implicate a liberty or property interest because it does not result in an atypical and

significant hardship. *See Williams v. Straub*, 26 F. App'x 389, 390-91 (6th Cir. 2001); *Fields v.

McGinnis*, No. 95-1609, 1996 WL 160817, at *1 (6th Cir. Apr. 4, 1996). Accordingly, Plaintiff fails

to state a due process claim resulting from his room confinement.

Plaintiff also cannot show that Amos and Barnett violated his constitutional rights

when they denied him access to the library during the period that he was classified to unemployable

status. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's

fundamental right of access to the courts. In order to state a claim, a prisoner must demonstrate

actual injury to pending or contemplated litigation. *Dellis*, 257 F.3d at 511 (citing *Lewis v. Casey*,

518 U.S. 343, 351 (1996)). Plaintiff does not make any allegations whatsoever that he suffered

injury to pending or contemplated litigation while he was on unemployable status. Consequently,

he fails to state a claim.

Plaintiff's remaining claims against Defendants Crosby and Harry concern the

handling of his prison grievance and Defendants' failure to follow Department policy. As discussed

above, § 1983 liability may not be imposed simply because a supervisor denied an administrative

grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d

at 300. Furthermore, Defendant Crosby's alleged failure to comply with Department policy does

not itself rise to the level of a constitutional violation. *Laney*, 501 F.3d at 581 n.2; *Smith*, 954 F.2d at 347-48; *Barber*, 953 F.2d at 240; *Spruytte*, 753 F.2d at 508-09.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   August 26, 2010                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            Chief United States District Judge